# CHARLESTON

SPERRY, ADM'R *et als.* v. TULLEY *et als.*

Submitted March 9, 1915.    Decided March 30, 1915.

1.  PARTNERSHIP—*Indebtedness—Contribution—Liability of Partners.*
    The question of liability of partners to contribute on account of indebtedness incurred in the purchase of property used by the firm in its business depends upon the relation in time, of the partnership agreement to the purchase.  (p. 109).

2.  SAME—*Indebtedness—Purchase of Property—Liability of Partner—Contribution.*
    If the purchase is subsequent to the agreement, it is a partnership transaction and the purchase money debt a firm liability, discharge of which by one or more of the members of the firm entitles them to contribution from their associates.  (p. 109).

3.  SAME—*Partnership Debt—Payment by Partner—Contribution.*
    If, in such case, some of the members of the firm have become insolvent, the solvent members must contribute to the extent of the indebtedness.  (p. 109).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Braxton County.

Suit by Clarence B. Sperry, administrator, etc., and others, against J. V. Tulley and others. From decree for plaintiffs, defendants appeal.

*Affirmed.*

*Linn, Byrne & Hines* and *C. L. Smith,* for appellants.

*W. L. Armstrong* and *Hines & Kelly,* for appellees.

POFFENBARGER, JUDGE:

The decree from which this appeal was taken is one enforcing contribution among copartners in a horse transaction.

Trexler Bros. sold them a stallion at the price of $3000.00, upon the understanding and agreement that each was to take one or more of the fifteen shares of $200.00 each, and took, in payment, three one thousand dollar negotiable notes, signed by the subscribers for ten shares. The subscribers for four shares did not sign the notes. By an arrangement with the selling agent, one of them paid nothing, his share being a gift. Three of the shares were paid for in cash, property and independent notes. On the three $1000.00 notes, credits were endorsed to the extent of $800.00, representing the four shares held by those who did not sign them. These notes were assigned to Louis Bennett. One share was not individually subscribed at all, but its price was included in the notes. In other words, non-subscription thereof wrought no abatement from the price of the horse.

In the results of the enterprise, the prospectus was not fulfilled. The returns were but little, if anything, in excess of the expenses. The horse died after this suit was brought and no part of the capital invested has ever been returned. For balances due on two of the notes, the holder recovered judgments, one for $1153.53 against G. M. Sponaugle, J. O. Baxter, L. D. Pepper, G. R. Gibson, Edwin Morrison and L. A. Koontz, which was satisfied by Morrison; and the other for $882.95 against Sponaugle, Baxter, Pepper, Gibson and Cecil Denham, which was satisfied by Denham. Two of the parties, Sigler, subscriber for two shares, and Freil, subscriber for one, were dead at the dates of the procurement of these judgments. In the first action, there was no service of

process on Denham and, in the second, none on Morrison or Koontz.

This equity suit was instituted by Sperry, administrator of the estate of Sigler, and Morrison and Denham, against all the other living copartners and the administratrix of Freil, to settle the partnership business and compel those of them who did not sign the notes to contribute to the payment of the two judgments herein described. The bill alleges non-payment of any part of the purchase money of the horse by T. G. Berry, J. V. Tulley, Momen Rhea, holders of one share each, and J. M. Maple and C. W. Maple, joint owners of another, and charges them with having entered into a secret and fraudulent arrangement with Trexler Bros., by which they were to have four shares for their services in procuring the signatures of the other parties to the notes. The endorsement on the notes, of credits amounting to $800.00 is alleged to have been made in pursuance of such secret agreement, and the real purchase price to have been only $2200.00, and, therefore, a conspiracy on the part of the holders of said four shares to deceive, cheat, defraud and overreach those who executed the notes, is charged. The bill further alleges the partnership agreement antedated the purchase of the horse and contemplated it as a firm transaction, and the agreement for such purchase was consummated, wherefore all became jointly liable for the purchase money, notwithstanding the failure of part of them to join in the purchase money notes. It also charges insolvency of Pepper, Baxter, Koontz and Sponaugle.

Deeming the purchase of the horse to have been made on behalf of all the parties at the price of $3000.00, in pursuance of an antecedent partnership agreement, the court decreed contribution, agreeably to the prayer of the bill. Though the commissioner to whom the cause was referred, for inquiry and findings as to the facts, did not specifically report the relative date of the partnership agreement, he treated it as having preceded the purchase and impliedly so found, for he reported the purchase price as a firm liability conferring right to contribution on those who had paid, or were bound to pay, more than the capital they had agreed to put in.

Overruling exceptions to this finding, the court, upon the evidence, came to the same conclusion.

The existence of a copartnership among the parties is overwhelmingly established by the evidence. All the parties met as *quasi* stockholders and elected managing agents called directors and carried on business for three years. All turns upon the commencement of the partnership or the relation thereof to the purchase and the legal effect of such relation. The date of the agreement must be gathered largely from the circumstances. Berry and the agent of Trexler Bros. went around among the parties and secured their co-operation. Some sort of a written agreement was signed by them, a copy of which was retained but has been lost and its contents are not disclosed by the evidence. The capital was not assembled in advance of the purchase. All stood upon an agreement, fixing their relative interests, and this must have preceded the purchase. At the date thereof no purchase had been made and the horse had not been delivered. Though the fact is not specifically established by evidence, it may well be assumed the parties all knew what horse was to be purchased, for his character and pedigree were important elements or factors in the prospective enterprise. All of these circumstances and others strongly tend to support the court's finding and, for that reason, we are unable to see that it is wrong.

The subsequent purchase of the horse was necessarily a firm and not an individual, transaction, from which the right of contribution results. Though the partnership agreement required only limited amounts of capital to be paid in, the law bound all of the parties for firm obligations. From these, limitations of the partnership agreement afforded no protection. Those who have been compelled to pay more than they agreed to contribute have paid it for the firm; on account of a firm debt, and they take the shoes of the creditor. Suppose one member had advanced the entire $3000.00, on the faith of the agreement. Would he not, as a matter of common and ordinary reason and justice, be entitled to require his associates to reimburse him to the extent of the amounts they agreed to pay? As to the sum so advanced, he would be a firm creditor, but, on the adjustment of accounts among the members as partners, he could require them to contribute

their capital in accordance with the agreement. If, some of the members were insolvent, or have become so since the making of the agreement, the law holds the solvent members liable to the extent of the debts, not merely to the extent of their copartnership agreement, wherefore they must put in ratably more than they agreed to pay. In *Gouthwaite* v. *Duckworth,* 12 East. 421, Lord Ellenborough said: "It comes to the question, whether, contemporary with the purchase of the goods, there did not exist a joint interest between these defendants. The goods were to be purchased, as Duckworth states in his examination, *for the adventure:* that was the agreement. Then, what was this adventure? Did it not commence with the purchase of these goods for the purpose agreed upon, in the loss and profits of which the defendants were to share?" He answered the question in the affirmative and held the purchase a partnership transaction. To the same effect, see *Smith* v. *Craven,* 1 Cromp. & Jerv. 500; *Browne* v. *Gibbons,* 5 Bro. P. C. 491; *Gardiner* v. *Childs,* 8 C. & P. 345; Collyer's Law, Part. pp. 806 to 819; Lindley's Law Part. p. 248.

Manifestly the basis of adjustment is the partnership agreement, not the notes given for a firm obligation. Having made this agreement, those who failed to join in the three $1000.00 notes could not withdraw from it secretly and clandestinely as they attempted to do. None of the other parties had knowledge of their separate and individual transactions with Trexler Bros.'s agent, until after exchange of the notes for the horse.

The basis of the decree is clearly right and all that remain are some criticisms of the bill. We think it sufficiently alleges the partneship and the allegations of fraud are unimportant. The right of the plaintiffs springs out of the contract, not fraud, and the decree has a firm foundation in the contract.

Seeing no error in the decree we affirm it.

*Affirmed.*